PEOPLE OF PORTO RICO, Plaintiff and Appellee, v. PEDRO DE JESÚS, Defendant and Appellant.

No. 2502. Argued June 11, 1925.—Decided June 15, 1925.

1. ASSAULT AND BATTERY—INTENT—PLEADING.—A complaint wherein it is alleged that certain wounds were inflicted with a "clasp knife * * * under circumstances indicating an intention to cause serious bodily injury" is sufficient to charge aggravated assault and battery.
2. ID.—SELF-DEFENSE.—A feeble man recovering from a serious illness, who after being insulted and knocked down and beaten by a strong and vigorous man drwas his penknife and wounds his assailant, acts in lawful self-defense.

District Court of Ponce, R. Díaz Cintrón J. Judgment of conviction of aggravated assault and battery. *Reversed.*

*Cristino R. Colón* for the appellant. *José E. Figueras, Fiscal,* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Pedro de Jesús was charged with aggravated assault and battery in that he assaulted and wounded Dolores Alvarado "with a clasp knife." In the complaint it is alleged that "The aggravating circumstance is that the battery was committed with a deadly weapon and under circumstances indicating an intention to inflict serious bodily injury."

The witnesses at the trial were Vázquez, the wounded man, Ceferino Torres, Florencio Ribera and Guillermo Ortiz—all called by the district attorney. The defendant offered no evidence. The court "found him guilty of the crime charged" and sentenced him to a fine of $100 or ninety days in jail.

The defendant appealed, assigning in his brief that the court erred (1) in not striking from the complaint the charge that the crime was aggravated and (2) in weighing the evidence.

[1] The first assignment is without merit. Although it should have been alleged in the complaint that the clasp knife was more than three inches long in order to warrant the conclusion that it was a prohibited weapon, yet, admitting that the aggravating circumstance of the use of a prohibited weapon did not exist, the classification of the crime as aggravated would be sustained by the allegation that the wounds were inflicted "under circumstances indicating an intention to cause serious bodily injury."

[2] In considering the second assignment it will be necessary to analyze the evidence.

After some unimportant statements the testimony of Vázquez, the wounded man, was as follows:

"What did this defendant do to you? A.—He wounded me.—With what did he wound you? A.—He wounded me with a knife about eight or nine inches long.—Was it not a clasp knife? A.—I do not know; that knife did not exist there [*sic*].—Where did he wound you? A.—He wounded me with a knife that he had, I mean, he stabbed me twice here on my back."

Vázquez said no more with regard to the manner of the occurrence.

Ceferino Torres testified that—

"Vázquez (the wounded man) treated this man (the defendant) in an abusive manner and then this man, who was in the house, went out to the road and after jumping over the wire fence dealt him several blows and they wrestled. Thereupon Flor Ribera came and separated them and he was already wounded."

Then he said that the defendant "was ill, very ill," and that Vázquez "rushed upon him" before the defendant drew any weapon. That Vázquez was strong and robust.

Florencio Ribera described the occurrence as follows:

"Vázquez was coming from Salinas toward Palmarejo * * * and Ceferino Torres, who was coming ahead of him, had stopped and Dolores Vázquez y Alvarado, as he has chosen to call himself, was coming from Salinas and when he came near this man immediately said to him: What does that meeting mean? We replied: We are drinking coffee; would you like to join us? He then said: No, thank you; I am addressing that man; he is a scoundrel and a bastard and will have to pay for what he has done; come out here. I have some children and took them away. This man was coming to where he was and then Dolores dismounted from his horse, dealt him a blow and they went down, and when I saw that they went down I left my house and took Dolores off this man and pushed him aside and ordered this man to my house.—Was this man ill? A.—Yes, he was recovering from typhoid fever.—How long since he had typhoid fever? A.—Four or five days.—Was he still very weak? A.—Yes, sir.—When you went to take this man off was he on top of the other? A.—Yes, sir."

Witness Ortiz was the physician who attended the wounded man. The witness stated that he had two wounds; one slight cut under the left shoulder-blade and another deep wound in the lower lobe of the right lung; one being somewhat serious and the other not. He also said that about that time he had attended the defendant, who had had typhoid fever for twenty-seven days, and that he must have been convalescent when the event took place.

This was all of the evidence. In our opinion it does not support the judgment of conviction. The defendant, a weak man, convalescent from a serious illness, was insulted by Vázquez or Alvarado, a robust and strong man. He was not only insulted, but when he jumped the wire fence between his house and the road Vázquez rushed upon him and knocked him to the ground, and that was the position in which the defendant made use of his clasp knife (witness Ribera called it a penknife) and wounded his assailant. The defendant acted in lawful self-defense.

It seems well to call attention also to the fact that the judgment in this case is framed in the same manner as that rendered in the case of *People* v. *Cintrón,* which we have just reversed because of its failure to specify the crime of which the defendant was convicted. After the repeated jurisprudence of this Supreme Court with regard to the matter that deficiency on the part of the district court has no satisfactory explanation.

The judgment appealed from must be reversed and the defendant discharged.

Mr. Justice Wolf took no part in the decision of this case.